E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SEAN D. PETERSON
Assistant United States Attorney
Chief, Riverside Branch Office
STEPHEN T. MERRILL (Cal. Bar No. 255827)
Special Assistant United States Attorney
Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 276-6144
    Facsimile: (213) 276-6202
    E-mail:   Stephen.Merrill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>SERGIO MAYA,<br><br>      Defendant. | ED CR No. 23-00052(A)-MCS<br><br>UNITED STATES RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM (ECF 38); EXHIBITS<br><br>Hearing Date: May 6, 2024<br>Hearing Time: 3:00 p.m. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, and Special Assistant United States Attorney Stephen T. Merrill, hereby files its response to defendant Sergio Maya's Sentencing Memorandum (ECF 38).

    The government's filing is based upon the attached memorandum of points and authorities, the files and records in this case, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

1     The government reserves the right to file any supplemental

2  sentencing position that may be necessary.

3

4  Dated: May 2, 2024          Respectfully submitted,

5                      E. MARTIN ESTRADA
                        United States Attorney

6

7                      MACK E. JENKINS
                      Assistant United States Attorney
                      Chief, Criminal Division

8

9                      SEAN D. PETERSON
                      Assistant United States Attorney
                      Chief, Riverside Branch Office

10

11

12

13                      STEPHEN T. MERRILL
                      Special Assistant U.S. Attorney

14

15                      Attorneys for Plaintiff
                      UNITED STATES OF AMERICA

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        As outlined in the Presentence Report (PSR), defendant is a

4    career offender.  (PSR ¶¶ 15-49.)  The PSR relies on a prior crime of

5    violence conviction, California Penal Code section 245, and two prior

6    controlled substance offenses that include violations of California

7    Health and Safety Code sections 11378 and 11351.  (Id.)  Defendant

8    objects to the PSR's conclusion the defendant has two prior

9    controlled substance convictions that qualify as career offender

10   predicates.  (ECF 38, pg. 16, Lns. 10-17.)[1]  The United States

11   disagrees.  While the United States does not rely on the prior

12   conviction for a violation of section 11351, section 11378 is a

13   controlled substance offense and defendant is a career offender

14   because he has a prior conviction for crime of violence and a prior

15   conviction for a controlled substance offense.

16   **II.   CALIFORNIA HEALTH AND SAFETY CODE SECTION 11378 IS A CONTROLLED**
         **SUBSTANCE OFFENSE**

17

18        Defendant brings before the Court an issue that is currently

19   before the Ninth Circuit, specifically, whether the definition of

20   methamphetamine under California Health and Safety Code section 11378

21   "sweeps more broadly" than its federal counterpart.  (ECF 38, pg. 17,

22   Lns. 3-12.)  As noted by defendant, the issue has been heavily

23   litigated in the Central District.  (Id.)  The issue is currently

24   before the Ninth Circuit in U.S. v. Martinez III, 23-5011.  The case

25   has been briefed and is set for oral argument on May 17, 2024.  The

26   Court should adopt the reasoning in the Government's Answering Brief

27

28        [1] Pinpoint citations to the CM/ECF filings refer to the page
     numbers generated in the CM/ECF header.

in <u>Martinez III</u> attached here as Exhibit A.  In the brief, the United States lays out five independent reasons why section 11378 qualifies as a controlled substance offense.  (<u>Id.</u> Pgs. 23-27.)  These reasons include the Ninth Circuit has held section 11378 qualifies as a controlled substance offense (<u>See</u> <u>United States v. Ceja</u>, 23 F.4th 1218, 1226 (9th Cir. 2022), and the Court can apply the modified categorical approach because California treats possession for sale of methamphetamine and possession for sale of other illicit substances as separate crimes.  <u>Unites States v. Martinez-Lopez</u>, 864 F.3d 1034, 1040 (9th Cir. 2017)(en banc).  The United States has included as Exhibit B <u>Shepard</u> documents relevant to a modified categorical approach analysis for this case that show the controlled substance defendant possessed for sale in his 2015 conviction for a violation of section 11378 was methamphetamine.  (<u>See</u> <u>Shepard v. United States</u>, 544 U.S. 13 (2005))

**III. CONCLUSION**

For the reasons set forth above, the Court should conclude defendant is a career offender and the United States respectfully requests that defendant be sentenced as follows: (1) a 240-month term of imprisonment; (2) a three-year period of supervised release; and (3) special assessments of $100.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

No. 23-50011

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

SAMUEL MARTINEZ III,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 21-67-FLA*

## GOVERNMENT'S ANSWERING BRIEF

E. MARTIN ESTRADA
United States Attorney

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

DAVID R. FRIEDMAN
Assistant United States Attorney
Criminal Appeals Section

1000 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-7418
Email: David.Friedman@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**DESCRIPTION**                                                   **PAGE**

I.    INTRODUCTION.................................................................1

II.   ISSUE PRESENTED .......................................................2

III.  STATEMENT OF THE CASE ........................................3

    A.   Jurisdiction, Timeliness, and Bail Status..............................3

    B.   Statement of Facts and Procedural History .........................3

        1.   Defendant is repeatedly convicted of trafficking
            methamphetamine and heroin in state court...............3

        2.   While on supervision, defendant is again arrested
            for trafficking methamphetamine..................................4

        3.   Defendant pleads guilty to possession with intent
            to distribute methamphetamine ...................................6

        4.   The Probation Office determines that defendant
            is a career offender.......................................................7

        5.   The district court sentences defendant to a below-
            Guidelines term of 130 months in prison ...................10

IV.   SUMMARY OF ARGUMENT.......................................13

V.    ARGUMENT.................................................................17

    A.   Defendant's § 11378 Convictions Qualify as Controlled
       Substance Offenses ...............................................................18

        1.   Standard of review.......................................................18

        2.   This Court has squarely rejected defendant's
            claim .............................................................................18

## TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                    **PAGE**

3. There is no textual overbreadth ...................................23

    a. California criminalizes analogues only that are intended for human consumption.................24

    b. The federal definition of a controlled substance analogue is best read disjunctively .........................................................28

4. There is not a realistic probability that California would apply its definition in an overbroad manner .......................................................................32

5. Defendant's claim also fails under the modified categorical approach ....................................................37

B. Even if § 11378 Is Indivisible and Overbroad, Defendant Is Still a Career Offender ...................................43

1. Standard of review.........................................................43

2. The plain meaning of "controlled substance" includes substances regulated by state law ...............43

VI. CONCLUSION ...............................................................................50

# TABLE OF AUTHORITIES

**DESCRIPTION**                                                                    **PAGE(S)**

## Cases

*Chavez-Solis v. Lynch*,
   803 F.3d 1004 (9th Cir. 2015)............................................................34

*Descamps v. United States*,
   570 U.S. 254 (2013) ...............................................................39, 40

*Dubin v. United States*,
   599 U.S. 110 (2023) ...................................................................31

*Gonzales v. Duenas-Alvarez*,
   549 U.S. 183 (2007) ...................................................15, 32, 34, 35

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001)............................................................23

*In re Hokulani Square, Inc.*,
   776 F.3d 1083 (9th Cir. 2015)........................................................14, 31

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ..........................................................16, 46, 47

*Lazo v. Wilkinson*,
   989 F.3d 705 (9th Cir. 2021)............................................................38

*Lopez-Valencia v. Lynch*,
   798 F.3d 863 (9th Cir. 2015) ............................................................41

*Loughrin v. United States*,
   573 U.S. 351 (2014) ...............................................................14, 29

*Marinelarena v. Garland*,
   6 F.4th 975 (9th Cir. 2021) ..........................................................16, 39

*McFadden v. United States*,
   576 U.S. 186 (2015)...................................................................29

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                   **PAGE(S)**

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc).....................................21, 22, 46

*Moran v. McDaniel*,
80 F.3d 1261 (9th Cir. 1996)...............................................................43

*Padilla-Martinez v. Holder*,
770 F.3d 825 (9th Cir. 2014)...............................................................38

*People v. Becker*,
107 Cal. Rptr. 3d 856 (Ct. App. 2010)................................39, 40, 41, 42

*People v. Leal*,
413 P.2d 665 (Cal. 1966)...............................................................14, 26

*People v. Martin*,
25 P.3d 1081 (Cal. 2001).....................................................................26

*People v. Polk*,
248 Cal. Rptr. 3d 335 (Ct. App. 2019)................................................26

*People v. Silver*,
281 Cal. Rptr. 354 (Ct. App. 1991)................................................24, 25

*People v. Sullivan*,
44 Cal. Rptr. 524 (Ct. App. 1965)........................................................26

*Sierra Forest Legacy v. Sherman*,
646 F.3d 1161 (9th Cir. 2011)..............................................................20

*Silva v. Garland*,
993 F.3d 705 (9th Cir. 2021)...............................................................20

*Stinson v. United States*,
508 U.S. 36 (1993)...............................................................................47

*United States v. Adair*,
38 F.4th 341 (3d Cir. 2022).................................................................47

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*United States v. Barai,*
  55 F.4th 1245 (9th Cir. 2022) ................................................................ 30

*United States v. Barlow,*
  83 F.4th 773 (9th Cir. 2023) .................................................................. 42

*United States v. Bautista,*
  989 F.3d 698 (9th Cir. 2021) .......................................................... passim

*United States v. Brown,*
  879 F.3d 1043 (9th Cir. 2018) ................................................................ 18

*United States v. Burgos-Ortega,*
  777 F.3d 1047 (9th Cir. 2015) .................................................. 15, 36, 37

*United States v. Castillo,*
  69 F.4th 648 (9th Cir. 2023) ........................................................... passim

*United States v. Ceja,*
  23 F.4th 1218 (9th Cir. 2022) ......................................................... passim

*United States v. Corrales-Vazquez,*
  931 F.3d 944 (9th Cir. 2019) ................................................................. 29

*United States v. Davis,*
  33 F.4th 1236 (VanDyke & Ikuta, JJ., concurring) ............................. 35

*United States v. Desurra,*
  868 F.2d 716 (5th Cir. 1989) (per curiam) .......................................... 25

*United States v. Gomez-Alvarez,*
  781 F.3d 787 (5th Cir. 2015) ................................................................ 44

*United States v. Granberry,*
  916 F.2d 1008 (5th Cir. 1990) .............................................................. 30

*United States v. Grisel,*
  488 F.3d 844 (9th Cir. 2007) (en banc) .................................... 33, 34, 37

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

*United States v. Henderson,*
  11 F.4th 713 (8th Cir. 2021) ................................................................ 44

*United States v. House,*
  31 F.4th 745 (9th Cir. 2022) (Christen, J., concurring)..... 15, 34, 35, 36

*United States v. Jones,*
  15 F.4th 1288 (10th Cir. 2021) ........................................................... 44

*United States v. Jones,*
  81 F.4th 591 (6th Cir. 2023) ........................................................ 16, 44

*United States v. Kirilyuk,*
  29 F.4th 1128 (9th Cir. 2022) ............................................................. 22

*United States v. Leal-Vega,*
  680 F.3d 1160 (9th Cir. 2012)................................................... passim

*United States v. Lewis,*
  58 F.4th 764 (3d Cir. 2023)........................................................... 44, 45

*United States v. Lopez,*
  998 F.3d 431 (9th Cir. 2021) ............................................................... 31

*United States v. Makkar,*
  810 F.3d 1139 (10th Cir. 2015) ........................................................... 29

*United States v. Martinez-Lopez,*
  864 F.3d 1034 (9th Cir. 2017) (en banc)................................. 15, 38, 39

*United States v. McFadden,*
  823 F.3d 217 (4th Cir. 2016)............................................................... 27

*United States v. Nazerzadeh,*
  73 F.4th 341 (5th Cir. 2023) ........................................................ 14, 30

*United States v. Nichols,*
  464 F.3d 1117 (9th Cir. 2006)............................................................. 43

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                            **PAGE(S)**

*United States v. Ramos-Medina,*
   706 F.3d 932 (9th Cir. 2013)..............................................13, 20, 21, 23

*United States v. Rodriguez-Gamboa,*
   972 F.3d 1148 (9th Cir. 2020)....................................................... passim

*United States v. Ruth,*
   966 F.3d 642 (7th Cir. 2020)..................................................................44

*United States v. Scott,*
   83 F.4th 796 (9th Cir. 2023) .................................................................43

*United States v. Sullivan,*
   714 F.3d 1104 (8th Cir. 2013).........................................................25, 27

*United States v. Townsend,*
   897 F.3d 66 (2d Cir. 2018) ...................................................................44

*United States v. Turcotte,*
   405 F.3d 515 (7th Cir. 2005).................................................................30

*United States v. Vance Crooked Arm,*
   788 F.3d 1065 (9th Cir. 2015) (per curiam) ........................................29

*United States v. Vega-Ortiz,*
   822 F.3d 1031 (9th Cir. 2016).....................................................35, 36, 38

*United States v. Verdugo,*
   --- F. Supp. 3d ----, 2023 WL 4611419 (S.D. Cal. July 17, 2023)...22, 42

*United States v. Ward,*
   972 F.3d 364 (4th Cir. 2020)..................................................................44

*United States v. Woods,*
   571 U.S. 31 (2013) ........................................................................14, 29

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

**Statutes**

18 U.S.C. § 841(c) ....................................................................... 45

18 U.S.C. § 3231 ........................................................................... 3

18 U.S.C. § 3553(a) ..................................................................... 11

18 U.S.C. § 3553(f)(1) ................................................................. 31

18 U.S.C. § 3742(a) ....................................................................... 3

21 U.S.C. § 802(32) ............................................................. passim

21 U.S.C. § 813 ..................................................................... 24, 25

21 U.S.C. § 841 ............................................................................. 6

26 U.S.C. § 5845(a) ..................................................................... 45

28 U.S.C. § 1291 ........................................................................... 3

Cal. Health & Safety Code § 11400 ........................................... 40

Cal. Health & Safety Code § 11401 ....................... 14, 24, 25, 40

Cal. Health & Safety Code § 11352(a) ............................. 4, 8, 17

Cal. Health & Safety Code § 11377 ........................................... 40

Cal. Health & Safety Code § 11378 .................................. passim

**United States Sentencing Guidelines**

U.S.S.G. Ch. One, Pt. A ............................................................. 48

U.S.S.G. § 2L1.2 ................................................................... 47, 49

U.S.S.G. § 4B1.1 ................................................................ 7, 8, 17

## TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                              **PAGE(S)**

U.S.S.G. § 4B1.2(a) ................................................................... 45, 46

U.S.S.G. § 4B1.2(b) ................................................................... passim

**Other Authorities**

Fed. R. App. P. 4(b)(1)(A) ............................................................ 3

CALCRIM No. 2302 .................................................................... 39

No. 23-50011

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

SAMUEL MARTINEZ III,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. CR 21-67-FLA*

## GOVERNMENT'S ANSWERING BRIEF

# I

# INTRODUCTION

Defendant Samuel Martinez "100% understand[s] why [he has] been classified as a career offender." (ER-69 (letter to the court).) After amassing four felony convictions for drug trafficking in state court, he pled guilty to possession with intent to distribute methamphetamine in this case. Given his record, the district court properly concluded that he qualifies as a career offender under the Sentencing Guidelines.

On appeal, defendant urges that his three prior convictions for possession for sale of methamphetamine, in violation of California Health & Safety Code § 11378, are not "controlled substance offenses" because California's definition of methamphetamine is overbroad. This Court, however, has squarely held that § 11378 is a controlled substance offense, *United States v. Ceja*, 23 F.4th 1218, 1226 (9th Cir. 2022), and "as a matter of law, that California's definition of methamphetamine is a categorical match to the definition under the federal CSA," *United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1154 n.5 (9th Cir. 2020). And regardless, defendant's claim that California's definition of methamphetamine is overbroad—because it incorporates an overbroad definition of controlled substance analogues—is not persuasive. Accordingly, this Court should affirm his sentence.

## II

## ISSUE PRESENTED

Whether defendant's three convictions for possession for sale of methamphetamine, in violation of California Health & Safety Code § 11378, qualify as "controlled substance offenses" under U.S.S.G. § 4B1.2(b).

## III

## STATEMENT OF THE CASE

### A.   Jurisdiction, Timeliness, and Bail Status

The district court's jurisdiction rested on 18 U.S.C. § 3231.  This Court's jurisdiction rests on 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The district court entered judgment on January 17, 2023.  (ER-263–68; *see also* ER-275 (showing entry date).)[1]  Defendant filed a timely notice of appeal on January 18, 2023.  (ER-269.)  *See* Fed. R. App. P. 4(b)(1)(A). Defendant is currently in custody, serving the sentence imposed in this case.

### B.   Statement of Facts and Procedural History

#### 1.   *Defendant is repeatedly convicted of trafficking methamphetamine and heroin in state court*

By his own admission, defendant has supported himself through "drug dealing" for most of his adult life.  (ER-69 (letter to court).)  Since 2009, he has sustained four felony convictions for possession for sale of methamphetamine, in violation of California Health & Safety Code

---

[1]  "ER" refers to the Excerpts of Record filed by defendant, "AOB" refers to defendant's opening brief, and "PSR" refers to the Presentence Investigation Report.

§ 11378, and a fifth felony conviction for possession of heroin for transportation/sale, in violation of California Health & Safety Code § 11352(a). (PSR ¶¶ 40, 43-46.) Apart from these drug trafficking offenses, defendant also has felony convictions for possession of a short-barreled rifle (PSR ¶ 37), possession of methamphetamine (PSR ¶ 38), vehicle theft (PSR ¶ 39), and evading a police officer (*id.*). And several of these convictions have included a gang enhancement because defendant is a long-time "Northside Colton gang member." (PSR ¶ 63; *see* PSR ¶¶ 37, 39.)

Consistent with this long criminal history, defendant has been "in and out of prison" since he was 17. (ER-69.) Indeed, he has repeatedly been sentenced to lengthy terms in California state prison. (*See, e.g.*, PSR ¶ 37 (16 months); ¶ 39 (5 years and 8 months); ¶ 43 (4 years); ¶ 45 (40 months).) These state prison terms, however, have not deterred him.

### 2. *While on supervision, defendant is again arrested for trafficking methamphetamine*

After one of his many prison terms, defendant was released on Post-Release Community Supervision, or PRCS. (PSR ¶ 45.) Defendant was also subject to a term of mandatory supervision because of a

different conviction for drug trafficking. (PSR ¶ 44.) He repeatedly violated the terms of his supervision. (*See* PSR ¶¶ 44-45.)

In March 2020, a state court issued a felony warrant because defendant again violated the terms of his PRCS. (ER-239–40.) Officers called defendant and informed him of the warrant, but he declined to surrender. (PSR ¶ 10.) Officers then obtained a ping warrant for defendant's phone and tracked him to an apartment complex in San Bernardino, California. (PSR ¶¶ 10-11.) The officers located defendant near the complex and took him into custody. (PSR ¶ 11.)

While being arrested, defendant admitted that he had "three balls" in his pocket. (PSR ¶ 12.) Officers searched defendant and found three bags that contained 9.9 grams of pure methamphetamine. (*Id.*) Officers also searched his cell phone and found several conversations discussing drug sales and firearms. (PSR ¶ 13.) For example, officers found text messages in which defendant appeared to be arranging the sale of a half-pound of methamphetamine. (*Id.*) And officers also discovered that defendant had texted someone multiple photos of a short-barreled rifle with the message, "Look how small I made it." (*Id.*)

The day after his arrest, defendant provided a statement to law enforcement. (PSR ¶ 16.) He admitted that he had been the "middle man" in some drug deals, but claimed that he had "slowed down" from the quantity of drug dealing that he did in the past. (*Id.*) Defendant also "made a few references to having cartel connections in Mexico, and he mentioned traveling to Oklahoma in the past for his trafficking activities." (*Id.*) And he spoke in detail about methamphetamine pricing and how the COVID-19 lockdowns had affected pricing. (*Id.*) The case was subsequently referred to federal authorities.

### 3.    *Defendant pleads guilty to possession with intent to distribute methamphetamine*

A federal grand jury returned a single-count indictment that charged defendant with possession with intent to distribute at least 5 grams of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), based on the March 2020 arrest. (ER-3–4.) In August 2021, defendant made his initial appearance and was released on bond. (CR 7, 18.) His bond conditions required him to complete residential drug treatment, but his initial program at the Salvation Army released him after he had "a physical altercation with another client." (PSR ¶ 5.) Defendant later completed a different treatment program. (PSR ¶ 7.)

6

In April 2022, defendant pled guilty to the indictment without the benefit of a plea agreement. (ER-9–31 (transcript of change-of-plea hearing); *see also* ER-5–8 (joint statement regarding defendant's "open plea").) At his change-of-plea hearing, defendant admitted that he had "possessed about 9.9 grams of pure methamphetamine and he intended to distribute it to others." (ER-26.) Defendant also acknowledged that he was subject to a five-year mandatory minimum based on the amount of methamphetamine that he possessed. (ER-19.)

### 4. *The Probation Office determines that defendant is a career offender*

The Probation Office concluded that defendant qualified as a career offender under the Sentencing Guidelines. (PSR ¶¶ 28-30.) In the Presentence Report, the Probation Office calculated an adjusted offense level of 24 based on the quantity of methamphetamine that defendant possessed. (PSR ¶¶ 20-27.) But the Probation Office then applied the career offender enhancement because defendant satisfied all three prongs of U.S.S.G. § 4B1.1(a): (1) he was at least 18 years old at the time of the instant federal offense; (2) this federal offense qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b); and (3) he has four prior convictions for controlled substance offenses—specifically,

three convictions for possession for sale of methamphetamine, in violation of California Health & Safety Code § 11378, and one conviction for possession of heroin for transportation/sale, in violation of California Health & Safety Code § 11352(a). (PSR ¶¶ 28-30.)[2] Under U.S.S.G. § 4B1.1(b), the enhancement raised defendant's offense level to 34 because he was facing a statutory maximum of 40 years. (PSR ¶ 30.)

After a three-point reduction for acceptance of responsibility, defendant's total offense level was 31. (PSR ¶¶ 31-33.) The Probation Office determined that his criminal history score was 23, which placed him in criminal history category VI—regardless of the career offender enhancement. (PSR ¶¶ 35-50.) With a total offense level of 31 and a criminal history category of VI, defendant's advisory Guidelines range was 188 to 235 months in prison. (PSR ¶ 94.)

The government agreed with these Guidelines calculations. (ER-34.) It recommended that the district court impose a low-end sentence of 188 months in prison. (*Id.*) This sentence was appropriate because

---

[2] As noted above, defendant has a fourth conviction for possession for sale of methamphetamine. (PSR ¶ 46.) This conviction, however, was not a qualifying offense because it occurred after the instant federal offense. (*See id.*)

8

of, among other reasons, the seriousness of the offense, defendant's long criminal history, his failure to be deterred by shorter prison sentences, and the fact that he committed the instant offense while on supervision in multiple state cases. (*See* ER-39–41.)

Defendant, however, argued that the applicable Guidelines range was 77 to 96 months in prison because he did not qualify as a career offender. (ER-49–50.) As a factual matter, defendant did not contest that he was a "career offender" in the ordinary sense of the term. In a letter to the court, he explained that "I 100% understand why I have been classified as a career offender. My record speaks for itself as far as dealing drugs." (ER-69.) But defendant claimed that he did not satisfy the legal definition in the Sentencing Guidelines. Specifically, he urged that his three § 11378 convictions do not qualify as controlled substance offenses because California's definition of methamphetamine includes controlled substance analogues, and the California definition of a controlled substance analogue is broader than the federal definition. (ER-51–54.) Ultimately, he requested that the district court sentence him to the five-year mandatory minimum. (ER-65.)

9

Before sentencing, the government responded to defendant's
overbreadth claim.  As it explained, defendant's claim was foreclosed
because this Court has twice held "as a matter of law, that California's
definition of methamphetamine is a categorical match to the definition
under the federal CSA." *United States v. Rodriguez-Gamboa*, 972 F.3d
1148, 1154 n.5 (9th Cir. 2020); *United States v. Ceja*, 23 F.4th 1218,
1226 (9th Cir. 2022).  (ER-94–95.)  And even if these cases are not
controlling, defendant failed to establish that California's definition of a
controlled substance analogue is broader than the federal definition or
that the modified categorical approach cannot be applied in this context.
(ER-95–101.)  Therefore, the government maintained that the Probation
Office had properly calculated the Guidelines range.  (ER-89.)

### 5. *The district court sentences defendant to a below-Guidelines term of 130 months in prison*

Defendant's sentencing hearing was held in January 2023.  (ER-221–62.)  At the outset, the district court adopted the Probation Office's
Guidelines calculations.  (ER-231–35.)  Thus, it agreed that defendant's
advisory Guidelines range was 188 to 235 months in prison.  (ER-235.)

Defendant's attorney again objected to the application of the
career offender enhancement because "California's definition of

10

methamphetamine analogue is not a categorical match to the definition of methamphetamine in the Controlled Substance[s] Act." (ER-228.) The district court overruled this objection. (ER-232–35.) Like the government, it concluded that this Court's decisions in *Rodriguez-Gamboa* and *Ceja* are "on point" and foreclose defendant's overbreadth claim. (ER-234–35.)

After the attorneys presented further argument, defendant gave a brief statement. (ER-244–45.) Defendant admitted that he had a long criminal history, which had caused him to be "in and out" of prison for most of his life. (ER-244.) But he claimed that his recent behavior on pretrial release demonstrated that he had changed. (ER-244–45.)

The district court then pronounced defendant's sentence. (ER-245–58.) To begin, the court expressed hope that defendant had turned his life around. (ER-245.) It acknowledged, however, that "when [you] put the last year or so in the context of a life, it's not that long; right?" (ER-246.) Thus, the court did not "feel perfectly confident" that defendant would not "go back to [his] old life." (*Id.*)

The district court next engaged in a detailed analysis of the 18 U.S.C. § 3553(a) factors. (ER-250–58.) As part of this discussion, it

11

highlighted that there were several aggravating factors in this case, including defendant's long criminal history.  (ER-252–53.)  Indeed, this was "the thirteenth time that a court [was] sentencing Mr. Martinez," and he had been "previously sentenced to a number of separate state prison terms, which add up to 17 years."  (*Id.*)  And defendant had "not demonstrated an ability to live a crime-free life for any sustained period of time."  (ER-256.)  The court also concluded that defendant's offense conduct was serious because the distribution of drugs "is very harmful" and "toxic to our society."  (*Id.*)  The evidence on his cell phone also suggested that defendant was using and carrying firearms, which "escalates the risk of injury and death to others."  (ER-256–57.)

Nevertheless, the district court ultimately decided to impose a below-Guidelines sentence of 130 months in prison.  (ER-257.)  While the court "believe[d] that a significant sentence is necessary in this case to protect society," it also believed that there were mitigating factors. (*Id.*)  In particular, the court concluded that "much of [defendant's] criminal activity is tied to his decades-long addiction and lack of parental supervision during his formative years."  (*Id.*)  Therefore, the court granted a substantial downward variance.  (ER-257–58.)

# IV

# SUMMARY OF ARGUMENT

The district court correctly concluded that defendant is a career offender under the Sentencing Guidelines.  His prior convictions for possession for sale of methamphetamine, in violation of California Health & Safety Code § 11378, qualify as "controlled substance offenses" for five independent reasons:

*First*, this Court has squarely held that § 11378 qualifies as a controlled substance offense.  *United States v. Ceja*, 23 F.4th 1218, 1226 (9th Cir. 2022).  It has also rejected, "as a matter of law," defendant's claim that the California definition of methamphetamine is broader than the federal definition.  *United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1154 n.5 (9th Cir. 2020).  These decisions remain binding despite defendant's new arguments.  *See United States v. Ramos-Medina*, 706 F.3d 932, 939 (9th Cir. 2013).

*Second*, these binding decisions were correctly decided because § 11378 is not overbroad.  While defendant insists that this statute is overbroad because it incorporates controlled substance analogues—and the California definition of an analogue is broader than the federal

13

definition—he fails to establish any textual overbreadth. Like the federal definition, the California definition of an analogue does not include substances that are "not intended for human consumption." Cal. Health & Safety Code § 11401(c)(3). Indeed, apart from this explicit exemption, California courts have long held that possession of a substance "[n]ot intended for consumption or sale" is insufficient to sustain a drug conviction. *People v. Leal*, 413 P.2d 665, 669 (Cal. 1966) (quotation marks omitted).

Furthermore, the federal definition of a controlled substance analogue—like the California definition—is best read disjunctively. *See United States v. Nazerzadeh*, 73 F.4th 341, 347 (5th Cir. 2023). Section 802(32)(A) list three alternative definitions of an analogue that are separated by "or," which is "almost always disjunctive." *United States v. Woods*, 571 U.S. 31, 45 (2013); *accord Loughrin v. United States*, 573 U.S. 351, 357 (2014). There is no reason to depart from the ordinary meaning of "or" in this context. And while other circuits have decided to ignore the plain language of § 802(32)(A), they have done so based on an improper and unnecessary use of the absurdity canon. *See In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015).

14

*Third*, there is not a realistic probability that California would apply § 11378 in an overbroad manner. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Even if there is some implicit textual overbreadth, defendant must still identity a case where someone "was in fact prosecuted or convicted" based on a substance that is legal under federal law. *United States v. House*, 31 F.4th 745, 758 (9th Cir. 2022) (Christen, J., concurring) (quoting *United States v. Burgos-Ortega*, 777 F.3d 1047, 1054-55 (9th Cir. 2015)). Defendant cannot satisfy that burden because he has yet to identify a single substance that qualifies as a controlled substance analogue under California law but not federal law—much less a case where California actually prosecuted someone for possessing such a substance.

*Fourth*, the application of the modified categorical approach shows that defendant's particular § 11378 convictions are not overbroad. Even if § 11378 reaches some analogues that federal law does not, California treats possession for sale of methamphetamine and possession for sale of other illicit substances—including controlled substance analogues— as "separate crimes." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1040 (9th Cir. 2017) (en banc). And consistent with that approach, a

15

jury must unanimously agree that the defendant possessed a particular illicit substance in a California drug prosecution. *See Marinelarena v. Garland*, 6 F.4th 975, 977 (9th Cir. 2021). As a result, this Court can consult the *Shepard* documents to see what substance was the basis of defendant's § 11378 convictions, and these documents readily confirm that he was convicted of possessing methamphetamine for sale—and not some other substance.

*Fifth*, § 11378 still qualifies as a controlled substance offense even if the statute is indivisible and overbroad. As six circuits have now held, the term "controlled substance" in U.S.S.G. § 4B1.2(b) includes substances that are regulated by federal *or* state law. *See United States v. Jones*, 81 F.4th 591, 599 n.5 (6th Cir. 2023) (collecting cases). Consequently, it is irrelevant whether § 11378 criminalizes some controlled substance analogues that are not prohibited by federal law— it is sufficient that these analogues are "controlled" by state law. While this Court has previously embraced a narrower interpretation of "controlled substance offense," these decisions relied upon a method of interpretation that was rejected by *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). Specifically, they disregarded the "ordinary meaning" of

16

"controlled substance" based on nonbinding Guidelines' commentary.
*United States v. Leal-Vega*, 680 F.3d 1160, 1166-67 (9th Cir. 2012);
*United States v. Bautista*, 989 F.3d 698, 702-03 (9th Cir. 2021).  That
analysis is clearly irreconcilable with *Kisor* and should be reexamined.
*See United States v. Castillo*, 69 F.4th 648, 656-58 (9th Cir. 2023).

## V

## ARGUMENT

Under the Sentencing Guidelines, defendant qualified as a career
offender if (1) he was at least 18 years old at the time of his conviction
for possession with intent to distribute methamphetamine; (2) this
federal conviction is a "controlled substance offense" under U.S.S.G.
§ 4B1.2(b); and (3) he has at least two prior felony convictions for
"controlled substance offenses."  U.S.S.G. § 4B1.1(a).  Defendant does
not dispute that he satisfied the first two requirements or that his
conviction for trafficking heroin, in violation of California Health
& Safety Code § 11352(a), is a controlled substance offense.  (AOB 10.)
But defendant does challenge the district court's conclusion that his
three convictions for possession for sale of methamphetamine, in
violation of California Health & Safety Code § 11378, are controlled

substance offenses.  As explained below, the district court committed no error for multiple reasons.

## A. Defendant's § 11378 Convictions Qualify as Controlled Substance Offenses

### 1. *Standard of review*

This Court reviews de novo whether a prior conviction qualifies as a "controlled substance offense" under the Sentencing Guidelines.  *See United States v. Brown*, 879 F.3d 1043, 1047 (9th Cir. 2018).  Under U.S.S.G. § 4B1.2(b), "the term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."

### 2. *This Court has squarely rejected defendant's claim*

Defendant argues that his three § 11378 convictions do not qualify as "controlled substance offenses" under U.S.S.G. § 4B1.2(b).  (AOB 13-32.)  In his view, § 11378 is overbroad because the statute criminalizes possession for sale of controlled substance analogues, and the California

definition of an analogue is purportedly broader than the federal definition. (AOB 14.) That claim fails for multiple reasons.

To begin, defendant's claim is foreclosed by binding precedent. In *United States v. Rodriguez-Gamboa*, 972 F.3d 1148 (9th Cir. 2020), this Court held "*as a matter of law*, that California's definition of methamphetamine is a categorical match to the definition under the federal CSA." *Id.* at 1154 n.5 (emphasis added). And in *United States v. Ceja*, this Court held that a district court "correctly applied the career offender guideline" because the defendant's "two prior convictions under California Health and Safety Code § 11378 are controlled substance offenses." 23 F.4th 1218, 1226 (9th Cir. 2022). In reaching that conclusion, this Court rejected the claim (now made by defendant) that Ceja's "prior state convictions are not controlled substance offenses because the California methamphetamine provisions sweep more broadly than the federal provisions." *Id.*

These decisions begin and end the analysis. *Ceja* squarely held that California Health & Safety Code § 11378 is a controlled substance offense—which is the precise issue presented here—while *Rodriguez-Gamboa* rejected defendant's claim that the California definition of

methamphetamine is overbroad.  Defendant cannot escape the force of these controlling precedents by resorting to the premise that questions not "squarely address[ed]" or "merely lurk[ing] in the record" remain undecided.  (AOB 29-30.)  The question *Rodriguez-Gamboa* and *Ceja* resolved was the same question defendant proposes to relitigate: whether the California definition of methamphetamine is broader than the federal definition.  This Court supplied a simple answer: no.  *See Ceja*, 23 F.4th at 1226; *Rodriguez-Gamboa*, 972 F.3d at 1154-55 & n.5. The question was squarely raised and squarely resolved.

Nor may defendant relitigate that question by proffering new "analogue arguments."  (AOB 29.)  This panel is "bound by prior circuit law even when a new litigant raises arguments that are 'characterized differently or more persuasively.'"  *Silva v. Garland*, 993 F.3d 705, 717 n.7 (9th Cir. 2021) (quoting *United States v. Ramos-Medina*, 706 F.3d 932, 939 (9th Cir. 2013)).  "This rule makes sense because we cannot continually re-litigate issues that our court has already decided simply because a party puts forth a new argument about why we should rule differently."  *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1189 (9th Cir. 2011).

Moreover, this rule applies specifically in the context of the categorical approach. In *Ramos-Medina*, the defendant similarly argued that this Court could disregard prior decisions holding that a state offense was a "crime of violence" because "he presents a different argument than did the petitioners in those cases." 706 F.3d at 938. But this Court rejected Ramos-Medina's invitation to depart from *stare decisis* because there had been "no change in the relevant statutes or regulations, nor in any governing authority, notably an intervening decision of the Supreme Court." *Id.* "Absent such a change," the panel was "not free to disregard the decision of another panel of our court simply because we think the arguments have been characterized differently or more persuasively by a new litigant." *Id.* at 938-39. The same principle applies here.

None of the cases cited by defendant have taken a different approach. (AOB 30.) In *United States v. Castillo*, 69 F.4th 648 (9th Cir. 2023), this Court departed from prior precedent "in the face of an intervening United States Supreme Court decision"—not just a new argument. *Id.* at 656 (quoting *Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003) (en banc)). While the government disputed whether

21

there was in fact an intervening decision, the panel's general approach comported with longstanding principles of stare decisis. *See Miller*, 335 F.3d at 900 (recognizing that a three-judge panel can reexamine precedent "where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority"). By contrast, defendant has not identified an intervening decision that supports his claim.

Similarly, in *United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022), this Court concluded that prior cases applying an application note were not binding because none had assessed the antecedent legal question of the "[n]ote's validity." *Id.* at 1134. Thus, the note's validity "remain[ed] an open question in our circuit" because it had never been addressed. *Id.*; *see also United States v. Verdugo*, --- F. Supp. 3d ----, 2023 WL 4611419, at *2 (S.D. Cal. July 17, 2023) (relying upon reasoning of *Kirilyuk*). The issues raised by defendant, however, are not "open question[s] in our circuit." Again, this Court has squarely held that § 11378 is a "controlled substance offense," *Ceja*, 23 F.4th at 1226, and that California's definition of methamphetamine is not overbroad, *Rodriguez-Gamboa*, 972 F.3d at 1154-55 & n.5. Those are the same "question[s]" presented in this case.

22

If defendant thinks that *Ceja* and *Rodriguez-Gamboa* were
wrongly decided, then he may petition for rehearing en banc.  *See
Ramos-Medina*, 706 F.3d at 939 (noting that this panel can also "ask
our court to take the subject up en banc").  But this three-judge panel
"is bound to reach the same result" as these decisions "even if it
considers [them] unwise or incorrect."  *Hart v. Massanari*, 266 F.3d
1155, 1170 (9th Cir. 2001).  "Binding authority must be followed unless
and until overruled by a body competent to do so."  *Id.*

### 3.    *There is no textual overbreadth*

In any event, defendant's overbreadth claim fails on the merits
because the text of California's definition of a controlled substance
analogue is not broader than the federal definition.  According to
defendant (AOB 14-19), there are two textual distinctions between the
federal and state definitions: (1) the federal definition includes only
substances that are "intended for human consumption," while the
California definition contains no such limitation; and (2) the federal
definition includes substances that both have (i) a chemical structure
substantially similar to the structure of a controlled substance *and* (ii) a
substantially similar effect on the central nervous system, while the

California definition only requires that one of these conditions be satisfied. *Compare* 21 U.S.C. § 802(32), *and* 21 U.S.C. § 813, *with* Cal. Health & Safety Code § 11401.

These purported distinctions are illusory. As the California Court of Appeal has explained, California's definition of a controlled substance analogue "employs the same terms" and "copied the language of the federal act which preceded it." *People v. Silver*, 281 Cal. Rptr. 354, 357 (Ct. App. 1991). As a result, it is no broader than the federal definition.

### a. *California criminalizes analogues only that are intended for human consumption*

To begin, California's definition of a controlled substance analogue is not "missing" an "intended-for-human-consumption requirement." (AOB 16.) Like federal law, California criminalizes analogues only that are intended for human consumption. That is apparent from the text of California Health & Safety Code § 11401, as well as California case law.

Under California Health & Safety Code § 11401(c)(3), a controlled substance analogue does not include "[a] substance, before an exemption as specified in paragraph (2) takes effect with respect to the substance, *to the extent the substance is not intended for human consumption*." Defendant argues that this provision applies only to

24

substances that are eventually covered by § 11401(c)(2), which exempts substances used for certain investigational purposes from the definition of a controlled substance analogue.  (AOB 15-16.)  Defendant, however, ignores that the federal definition of a controlled substance analogue contains a nearly identical provision.  *See* 21 U.S.C. § 802(32)(C)(iv) (clarifying that a controlled substance analogue does not include "any substance to the extent not intended for human consumption before such an exemption takes effect with respect to that substance").  And courts have consistently held that this federal provision—apart from 21 U.S.C. § 813—"expressly excludes substances to the extent the substances are not intended for human consumption."  *United States v. Sullivan*, 714 F.3d 1104, 1108 (8th Cir. 2013); *see also United States v. Desurra*, 868 F.2d 716, 717 (5th Cir. 1989) (per curiam).  There is no reason to interpret § 11401, which "employs the same terms" and "copied the language of the federal act which preceded it," differently than § 802(32).  *Silver*, 281 Cal. Rptr. at 357.

That is particularly true because it would not make sense for California to prosecute a distributor of illegal drugs for possessing a substance he never intended another person to consume.  In fact, the

California Supreme Court has instructed that "[t]he essential elements of unlawful possession of a controlled substance are dominion and control of the substance in a quantity *usable for consumption or sale*." *People v. Martin*, 25 P.3d 1081, 1083 (Cal. 2001) (quotation marks omitted) (emphasis added). And "a usable quantity of a controlled substance is shown if it was of a quantity which could be potentiated by consumption in any of the manners customarily employed by users." *People v. Polk*, 248 Cal. Rptr. 3d 335, 343 (Ct. App. 2019) (cleaned up). Given these principles, California courts have long held that possession of a substance "[n]ot intended for consumption or sale" is insufficient to sustain a drug conviction. *People v. Leal*, 413 P.2d 665, 669 (Cal. 1966) (quoting *People v. Sullivan*, 44 Cal. Rptr. 524, 526 (Ct. App. 1965)).[3]

Defendant's claim to the contrary not only rests on the false premise that California law lacks an intended-for-human-consumption requirement for its analogues (it does not), but also seems to rest on a misunderstanding of federal law. (AOB 25-26.) Defendant suggests

---

[3] Defendant dismisses this line of authority as merely about the "quantity" of drugs needed to sustain a conviction (AOB 20 n.38), but *Leal* shows that it also imposes an intended-for-human-consumption requirement.

that a substance does not qualify as an analogue under federal law if it
is not intended for human consumption by the manufacturer or as a
general matter—even if a particular distributor intends for others to
consume it.  (*See* AOB 25 (highlighting that analogues are sometimes
labeled or stamped "not intended for human consumption").)[4]  This
would apparently create a mismatch with California law, where the
distributor's intent is enough.  But under federal law, the relevant
inquiry is also whether the *particular person* selling a substance
intended it for human consumption.  If "the defendant . . . intended that
the substance be used for human consumption," then it can qualify as
an analogue.  *United States v. McFadden*, 823 F.3d 217, 223 (4th Cir.
2016); *see also Sullivan*, 714 F.3d at 1107-08 (affirming the defendant's
conviction because there was sufficient evidence that "he intended the
powder for human consumption").  As a result, there is no mismatch
between federal law and California law with respect to this issue.

---

[4]  To the extent defendant argues that improper labeling can raise
unique "prosecutorial challenges" under federal law, that is irrelevant.
(AOB 25-26.)  A substance qualifies as a controlled substance analogue
under federal law if it satisfies the requirements of 21 U.S.C. § 802(32),
even if that may be difficult to prove.

### b. The federal definition of a controlled substance analogue is best read disjunctively

Defendant is also wrong that California's definition of an analogue is overbroad because it has two "*disjunctive* criteria," as opposed to the purportedly conjunctive federal definition.  (AOB 17.)  Under federal law, the term "controlled substance analogue" means a substance—

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).  The use of the word "or" to separate the three definitions in this list indicates that they are alternative ways of defining a "controlled substance analogue"—not elements of a conjunctive definition.  Indeed, the Supreme Court has repeatedly recognized that the "ordinary use" of "or" is "almost always disjunctive, that is, the words it connects are to be given separate meanings."

28

*United States v. Woods*, 571 U.S. 31, 45 (2013) (quotation marks
omitted); *accord Loughrin v. United States*, 573 U.S. 351, 357 (2014).
So, too, has this Court when interpreting criminal statutes.  *See, e.g.*,
*United States v. Corrales-Vazquez*, 931 F.3d 944, 952 (9th Cir. 2019);
*United States v. Vance Crooked Arm*, 788 F.3d 1065, 1074-75 (9th Cir.
2015) (per curiam).

Defendant does not explain why this Court should depart from the
ordinary use of "or" here.  As a threshold matter, the government has
never made a "concession" that his conjunctive reading of § 802(32)(A) is
correct.  (AOB 18.)  In *McFadden v. United States*, 576 U.S. 186 (2015),
the government only "accepted *for the purpose of this case*" that
§ 802(32)(A) should be read conjunctively.  *Id.* at 194 n.2 (emphasis
added).  The government never took an actual position as to the correct
interpretation because, as the Court agreed, that issue did not impact
the resolution of the case.  *Id.*[5]  Defendant is also incorrect that no
circuit has ever adopted a disjunctive interpretation of § 802(32)(A).

---

[5]  For this reason, the Tenth Circuit's decision in *United States v.
Makkar*, 810 F.3d 1139 (10th Cir. 2015), is not persuasive because it
relies upon the same incorrect interpretation of *McFadden* as
defendant.  *Id.* at 1142-43.

(*See* AOB 19 n.37.)  While he suggests that *United States v. Granberry*, 916 F.2d 1008 (5th Cir. 1990), did not squarely address this issue, the Fifth Circuit recently reaffirmed that "*Granberry* adopted a disjunctive test as to 21 U.S.C. § 802(32)(A)."  *United States v. Nazerzadeh*, 73 F.4th 341, 347 (5th Cir. 2023).

To be sure, other circuits have adopted defendant's interpretation of § 802(32)(A), but these decisions are not persuasive.  (AOB 17-19.) "The majority of these courts base their rulings largely on the absurd results that might obtain under a disjunctive reading, noting that alcohol and caffeine could be criminalized as controlled substance analogues based solely on the fact that, in concentrated form, they might have depressant or stimulant effects similar to illegal drugs." *United States v. Turcotte*, 405 F.3d 515, 522 (7th Cir. 2005).  But the absurdity canon is not needed to avoid the criminalization of these substances because they are already excluded by the text.  As with any statute, this Court should "apply the ordinary meaning" of the language in § 802(32)(A).  *United States v. Barai*, 55 F.4th 1245, 1250 (9th Cir. 2022).  And an ordinary speaker of English would not say that beer has a "substantially similar" depressant effect as fentanyl or that coffee has

30

a "substantially similar" stimulant effect as methamphetamine.  That conclusion is supported by the broader context of the statute, as Congress clearly intended to criminalize substances that are similar to illicit drugs—not legal substances that contain caffeine and alcohol.  *See Dubin v. United States*, 599 U.S. 110, 120 (2023) (relying upon context of criminal statute to adopt narrower interpretation because "a statute's meaning does not always turn solely on the broadest imaginable definitions of its component words" (cleaned up)).

This Court has also warned against using absurdity "to rewrite Congress's clear and unambiguous text."  *United States v. Lopez*, 998 F.3d 431, 440 (9th Cir. 2021) (refusing to "rewrite § 3553(f)(1)'s 'and' into an 'or' based on the absurdity canon").  Rather, the absurdity canon "is confined to situations where it is quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone."  *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015) (alteration adopted and quotation marks omitted).  As explained above, any absurdity here is not "so clear as to be obvious to most anyone" because the text of § 802(32)(A) is best

read to exclude legal substances like caffeine and alcohol. Accordingly, this Court should adopt the ordinary, disjunctive reading of this statute.

### 4. There is not a realistic probability that California would apply its definition in an overbroad manner

Even if defendant has established textual overbreadth, he has failed to show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the federal definition. *Rodriguez-Gamboa*, 972 F.3d at 1153 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). He asserts that there are substances that fit within the California definition of a controlled substance analogue, but not the federal definition. (AOB 25-28.) But he has not identified any such substances—or a single case where someone was prosecuted in California for possessing a controlled substance analogue that is not prohibited under federal law. That is despite the fact that this issue has now been litigated in dozens of cases throughout this Circuit. As a result, defendant has failed to show a "realistic probability" that California's analogue statute might be used to prosecute someone who would not face criminal liability under federal law. *See Rodriguez-Gamboa*, 972 F.3d at 1153.

Defendant may not circumvent the realistic probability standard merely by pointing to the text of California's analogue statute. (AOB 24.) There are cases in which statutory overbreadth is so plain as to demand no further inquiry—a situation that *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc), *abrogated on other grounds by United States v. Stitt*, 139 S. Ct. 399 (2018), exemplifies. There, the Oregon legislature intentionally defined "burglary" to be broader than its "ordinary meaning," specifying in the statute that "'building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on of business therein." *Id.* at 850 (cleaned up). As this Court held, the "Oregon legislature expressly recognized the ordinary, generic meaning of burglary and consciously defined second-degree burglary more broadly by extending the statute to non-buildings." *Id.*

*Grisel* demonstrates that "explicit[]" facial overbreadth exists only when "no 'legal imagination'" is necessary to identify a "realistic probability . . . that the state will apply its statute to conduct that falls outside the generic definition of the crime." *Id.* (quoting *Duenas-*

*Alvarez*, 549 U.S. at 193). The textual overbreadth must be unmistakable. Where a state legislature intentionally "add[s] to" the "ordinary meaning" of a crime, "[t]he state statute's greater breadth is evident from its text." *Id.* (emphasis omitted). So, too, where Congress intentionally "remove[s]" a substance "from the schedule of [federal] controlled substances" that is expressly criminalized by state law. *United States v. Bautista*, 989 F.3d 698, 704-05 (9th Cir. 2021) (concluding that Arizona's definition of marijuana was overbroad because it included hemp). Or where a state child-pornography statute prohibits a broad category of depictions nowhere addressed in the federal statute. *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1010 (9th Cir. 2015). Confronted with these "readily apparent" overbreadths, a defendant has "no need to point to any actual prosecution." *Id.* at 1008-10.

That kind of clarity is absent here. "Controlled substances statutes are much less intuitive" than a statute that prohibits burglary. *United States v. House*, 31 F.4th 745, 759 (9th Cir. 2022) (Christen, J., concurring). "Indeed, absent a degree in pharmacology, it is doubtful there will be many judges in a position to accurately predict from the

text of a controlled substances statute that a state would prosecute a particular controlled substance." *Id.* And "[t]his is why, even when a state statute sweeps in more conduct or controlled substances, the complete *Taylor* analysis includes the reality check the Supreme Court introduced in *Duenas-Alvarez* to determine whether there is a realistic probability a state would prosecute the possession or distribution of a particular controlled substance." *Id.* at 759-60; *see also United States v. Davis*, 33 F.4th 1236, 1245-46 & n.7 (VanDyke & Ikuta, JJ., concurring) (endorsing the same approach).

In *United States v. Vega-Ortiz*, 822 F.3d 1031 (9th Cir. 2016), for example, this Court faced a superficially straightforward, textual overbreadth: while federal law excludes certain "product[s] containing L-meth from the definition of methamphetamine," California's definition of methamphetamine does not. *Id.* at 1035-36. Nevertheless, this was not sufficient under *Duenas-Alvarez*. *Id.* The California statute was not "overbroad on its face," because it did not "expressly include conduct not covered by the generic offense." *Id.* at 1036 (quotation marks omitted). Thus, the defendant was required to provide other evidence of "a 'realistic probability' that he would be

35

prosecuted under § 11378 for possession of the excluded product containing L-meth." *Id.* He failed to do so. Accordingly, this Court affirmed that his conviction for trafficking methamphetamine (under California Health & Safety Code § 11378) was an aggravated felony. *Id.*; *see also United States v. Burgos-Ortega*, 777 F.3d 1047, 1054-55 (9th Cir. 2015) (relying upon similar reasoning to conclude that Washington drug statute was not overbroad).

That reasoning applies here. Although defendant claims that *Vega-Ortiz* is distinguishable because "the overbreadth issues here do not involve a federal exception and a silent state statute" (AOB 24), that is precisely his argument with respect to "the missing intended-for-human consumption requirement" (AOB 16). Defendant urges that the California definition of an analogue is overbroad because the text of the federal definition contains an exception for substances not intended for human consumption, while the California definition is silent about such substances. Because defendant claims that the California definition is "impliedly overbroad," he must identity a case where someone "was in fact prosecuted or convicted" based on a substance that is legal under federal law. *House*, 31 F.4th at 758 (Christen, J., concurring) (quoting

36

*Burgos-Ortega*, 777 F.3d at 1054-55).

The same requirement applies to defendant's claim regarding the purportedly conjunctive nature of § 802(32)(A). Again, a statute's text alone can be used to establish overbreadth only when "no legal imagination" is required to conclude that the state law will be applied in a broader manner than its federal counterpart. *Grisel*, 488 F.3d at 850 (quotation marks omitted). Here, such "legal imagination" is plainly needed to establish overbreadth because defendant has not identified a single substance that falls within the California definition of a controlled substance analogue, but not the federal definition. He simply asks us to *imagine* that such a substance exists based on general statements from reports and other secondary sources. (*See* AOB 25-27.) Given this reality, defendant has failed to establish that the California definition of an analogue is overbroad.

### 5. *Defendant's claim also fails under the modified categorical approach*

Even if § 11378 is generally overbroad, defendant's claim also fails because the application of the modified categorical approach shows that defendant's particular § 11378 convictions are controlled substance offenses. That is because § 11378 is divisible as to methamphetamine

and its analogues.  And the conviction, or *Shepard*, documents for defendant's prior convictions confirm that he was convicted of trafficking methamphetamine—and not some other substance.

This Court has already held that § 11378 is divisible as to regular controlled substances—that is, substances that are not analogues—because "California state law treats the type of controlled substance as a separate element in prosecuting relevant drug offenses." *Padilla-Martinez v. Holder*, 770 F.3d 825, 831 n.3 (9th Cir. 2014).  It is particularly significant that the California instruction "for conviction under § 11378 requires the jury to fill in the blank where the controlled substance is to be identified." *Id.*; *see also Vega-Ortiz*, 822 F.3d at 1035.  This requirement ensures that the jury will "unanimously agree" that "a particular controlled substance" is the basis of the defendant's conviction.  *United States v. Martinez-Lopez*, 864 F.3d 1034, 1041 (9th Cir. 2017) (en banc) (interpreting similar California drug statute); *see also Lazo v. Wilkinson*, 989 F.3d 705, 712 (9th Cir. 2021) (collecting similar cases).

The same reasoning demonstrates that § 11378 is also divisible as to analogues.  If the substance at issue in a California drug prosecution

is a controlled substance analogue, "the judge must require the jury to name the specific type of controlled substance and to find whether it is an analogue of a listed controlled substance." *Marinelarena v. Garland*, 6 F.4th 975, 977 (9th Cir. 2021) (interpreting similar California drug statute); *see* CALCRIM No. 2302 (same instruction for § 11378). In other words, the jury must unanimously agree that a particular controlled substance analogue is the basis of the defendant's conviction. And at the beginning of such a prosecution, the charging document must also identify the particular analogue that the defendant is accused of possessing for sale. *See People v. Becker*, 107 Cal. Rptr. 3d 856, 860-61 (Ct. App. 2010).

These rules show that California treats possession for sale of methamphetamine and possession for sale of other illicit substances—including controlled substance analogues—as "separate crimes." *Martinez-Lopez*, 864 F.3d at 1040. They also eliminate any risk that a defendant might receive an enhancement based on the possession for sale of methamphetamine, when he actually possessed some other substance. *See Descamps v. United States*, 570 U.S. 254, 272 (2013) (explaining purpose of categorical approach). "A later sentencing court

39

need only check the charging documents and instructions" to see what substance was the basis of his conviction. *Id.*

Defendant is wrong that these documents will not reveal "what *kind* of methamphetamine" was possessed in a particular case. (AOB 21-22.) To begin, his citation to California Health & Safety Code § 11401(a) is a non sequitur. (AOB 22.) It is true that under California law, a controlled substance analogue shall "be treated the same as the controlled substance . . . of which it is an analog." Cal. Health & Safety Code § 11401(a). That provision, however, merely implements the California legislature's intent that a controlled substance and its analogues "be considered identical, for purposes of the penalties and punishment." Cal. Health & Safety Code § 11400. It does not eliminate or modify the requirement that a jury must unanimously agree about the substance that was possessed in a particular case.

Defendant's reliance on the California Court of Appeal's decision in *Becker* is similarly misplaced. (AOB 22.) Becker was convicted of simple possession of Ecstasy, in violation of California Health & Safety Code § 11377. 107 Cal. Rptr. 3d at 858. On appeal, he argued that there was insufficient evidence that Ecstasy qualifies as either a

controlled substance or a controlled substance analogue under
California law. *Id.* at 859. The California Court of Appeal rejected that
claim because "the jury could have reasonably concluded that Ecstasy or
MMDA was (1) a controlled substance itself or (2) a controlled substance
analog of methamphetamine." *Id.* at 860.

Defendant urges that this holding means that, in California, a
prosecutor can "prove his case by showing that the drug at issue either
is a controlled substance or meets the definition of an analogue." (AOB
22.) But that is beside the point. Even if the jury in *Becker* was not
required to agree on the legal "*theory*" underlying his guilt, there is no
dispute that the jury unanimously agreed—as a factual matter—that
the *drug* he possessed was Ecstasy. 107 Cal. Rptr. 3d at 860 (emphasis
added). And that's what matters for divisibility. As this Court has
recognized, "divisibility hinges on whether the jury must unanimously
agree on the fact critical to the federal statute." *Lopez-Valencia v.
Lynch*, 798 F.3d 863, 868-69 (9th Cir. 2015). Under California law,
jurors must agree on the "critical" fact here—i.e., what drug did the
defendant possess—not the legal theory—i.e., whether that drug is a
controlled substance or a controlled substance analogue. Therefore,

41

*Becker* is consistent with the proposition that the conviction documents will show what substance was the basis of a defendant's conviction.[6] Indeed, *Becker* specifically affirmed that the charging document in a California drug prosecution (which is the type of conviction document relevant here) must identify the particular substance that the defendant is accused of possessing. 107 Cal. Rptr. at 860-61.

Consequently, the modified categorical approach can be applied in this case. "Under the modified categorical approach, we may consult *Shepard* documents, a limited class of documents, including the indictment, jury instructions, or plea agreement, to determine which specific crime a defendant was convicted of committing." *United States v. Barlow*, 83 F.4th 773, 782 (9th Cir. 2023). These documents reveal that at least two of defendant's § 11378 convictions were based on his possession for sale of "methamphetamine," and not some other substance. (ER-131, 135 (documents for 2011 conviction); ER-156, 163 (documents for 2016 conviction).) As a result, the district court properly applied the career offender enhancement. *See Ceja*, 23 F.4th at 1226.

---

[6] *Verdugo*'s contrary conclusion should be disregarded because it relies upon the same incorrect reasoning. 2023 WL 4611419, at *3.

42

## B. Even if § 11378 Is Indivisible and Overbroad, Defendant Is Still a Career Offender

### 1. *Standard of review*

The proper interpretation of a Sentencing Guideline is a legal question that is reviewed de novo. *United States v. Scott*, 83 F.4th 796, 799 (9th Cir. 2023). This Court may affirm the application of a Guidelines enhancement "on any ground supported by the record, even if it differs from the rationale of the district court." *United States v. Nichols*, 464 F.3d 1117, 1122 (9th Cir. 2006) (quoting *Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir. 1996)).

### 2. *The plain meaning of "controlled substance" includes substances regulated by state law*

This Court may also affirm on another ground: even if § 11378 is indivisible and overbroad, it still qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). That is because the ordinary meaning of "controlled substance" includes substances that are regulated by federal *or* state law.

The underlying premise of defendant's claim is that "[t]he term 'controlled substance' as used in § 4B1.2(b) reaches only drugs covered by the federal Controlled Substances Act." (AOB 13.) As six circuits have now held, however, the term "controlled substance" actually

43

reaches drugs regulated by either federal or state law. *United States v. Jones*, 81 F.4th 591, 599-600 (6th Cir. 2023); *see also United States v. Lewis*, 58 F.4th 764, 769-70 (3d Cir. 2023); *United States v. Ward*, 972 F.3d 364, 371-74 (4th Cir. 2020); *United States v. Ruth*, 966 F.3d 642, 651-54 (7th Cir. 2020); *United States v. Henderson*, 11 F.4th 713, 718-19 (8th Cir. 2021); *United States v. Jones*, 15 F.4th 1288, 1291-96 (10th Cir. 2021); *but see United States v. Townsend*, 897 F.3d 66, 70-73 (2d Cir. 2018) (disagreeing with these circuits); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793-94 (5th Cir. 2015) (same). Therefore, it is irrelevant whether § 11378 prohibits the possession for sale of some substances that are not illegal under federal law. Rather, it is sufficient that § 11378 prohibits the possession for sale of substances that are "controlled" *under state law*.

That conclusion flows from the text of the Sentencing Guidelines. Under § 4B1.2(b), "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." This definition

44

does not tether the term "controlled substance offense" to the Controlled Substances Act ("CSA") or any other federal law. To the contrary, it provides that a felony offense "under federal or *state law*" qualifies as long as it prohibits the possession for sale of a "controlled substance." And as this Court has previously recognized, the "ordinary meaning" of "controlled substance" includes substances that are regulated by state law. *United States v. Leal-Vega*, 680 F.3d 1160, 1166 (9th Cir. 2012).

Ultimately, "[t]he federal-law-only approach reads into § 4B1.2(b) a cross-reference to the CSA that isn't there." *Lewis*, 58 F.4th at 769. The text of this Guideline does not limit the definition of a "controlled substance offense" to an offense involving a substance prohibited by the CSA. And tellingly, similar Guidelines provisions do contain such cross-references to federal law. For example, § 4B1.2(a) defines the term "crime of violence" as "the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." Such a "distinction between definitions in neighboring subsections within the same provision shows that the drafters knew how" to limit the scope of § 4B1.2(b) based on cross-references to federal law, "but chose not to do so." *Castillo*, 69 F.4th at 658 (relying upon

comparison between the language of § 4B1.2(a) and § 4B1.2(b) to conclude that § 4B1.2(b) does not include inchoate offenses).  This Court should honor that choice by embracing the ordinary meaning of "controlled substance offense."  *See id.*

The government acknowledges that this Court previously embraced a narrower interpretation of "controlled substance offense" in *United States v. Bautista*, 989 F.3d 698 (9th Cir. 2021), and *United States v. Leal-Vega*, 680 F.3d 1160 (9th Cir. 2012).  These decisions, however, relied upon an outdated method of interpretation that is clearly irreconcilable with *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).  Indeed, this Court recently recognized that several other decisions interpreting § 4B1.2(b) are no longer good law because they afforded too much deference to Guidelines' commentary—and departed from the "plain language" of § 4B1.2(b).  *Castillo*, 69 F.4th at 657-58.  This Court should also reexamine *Leal-Vega* and *Bautista* in light of the Supreme Court's decision in *Kisor*.  *See Miller*, 335 F.3d at 900.

In *Kisor*, the Supreme Court "narrowed" the deference that "applies to the Guidelines' commentary."  *Castillo*, 69 F.4th at 655.  Before *Kisor*, this Court was required to give "controlling weight" to

46

commentary unless it was "plainly erroneous or inconsistent" with the text of the relevant Guideline. *Stinson v. United States*, 508 U.S. 36, 45 (1993) (quotation marks omitted). *Kisor*, however, clarified that Guidelines' commentary should be followed only if it clarifies a "genuinely ambiguous" aspect of a Guideline. 139 S. Ct. at 2415. And after *Kisor*, this Court may no longer rely upon Guidelines' commentary to expand or narrow the unambiguous text of a Guideline. *See Castillo*, 69 F.4th at 662; *see also United States v. Adair*, 38 F.4th 341, 349-54 (3d Cir. 2022) (disregarding commentary that would have narrowed text of the Guideline). Rather, this Court must apply the "plain language" of a Guideline, without regard to other non-binding pronouncements by the Sentencing Commission. *Castillo*, 69 F.4th at 658.

*Leal-Vega* and *Bautista* are clearly irreconcilable with *Kisor*. In *Leal-Vega*, this Court addressed the proper interpretation of the term "drug trafficking offense" in U.S.S.G. § 2L1.2. 680 F.3d at 1163. To interpret that term, this Court looked to the Guidelines' commentary, which then defined a "drug trafficking offense" as "[a]n offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled

47

substance (or a counterfeit substance) or the possession of a controlled substance." *Id.* (quoting commentary). Consistent with *Kisor*, the government argued that the term "controlled substance" should be given its "ordinary meaning of a drug regulated by law"—whether that law be a federal law or a state law. *Id.* at 1166.

This Court, however, rejected the government's position. While *Leal-Vega* recognized that the "ordinary meaning" of "controlled substance" includes substances that are regulated by state law, this Court thought that it was bad policy to make "the definition of what is a 'controlled substance' [] necessarily dependent on . . . state law." *Id.* at 1166-67. As a result, *Leal-Vega* concluded that "controlled substance" must mean *federally* controlled substance because that definition advances "the goal of the Sentencing Guidelines to seek 'reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders.'" *Id.* at 1167 (quoting U.S.S.G. Ch. One, Pt. A). And in *Bautista*, this Court then applied the same reasoning to interpret the term "controlled substance" in U.S.S.G. § 4B1.2(b). 989 F.3d at 702-03.

There are two glaring issues with *Leal-Vega*.  To begin, this Court relied exclusively upon Guidelines' commentary to interpret the text of U.S.S.G. § 2L1.2, without considering whether the term "drug trafficking offense" had an unambiguous definition.  More troubling, this Court then made an explicit decision to depart from the ordinary meaning of "controlled substance" based on a policy "goal" expressed in Guidelines' commentary.  680 F.3d at 1167.  Indeed, this Court decided that *introductory commentary*—which expresses only general goals— trumps the text of Guidelines contained in different chapters.  *Id.*

That type of reasoning is no longer permitted.  After *Kisor*, this Court must apply the "plain language" of § 4B1.2(b).  *Castillo*, 69 F.4th at 658.  It may not disregard the ordinary meaning of this provision based on policy goals that are expressed in Guidelines' commentary. *See id.* at 657-58.  Accordingly, this Court should join the six other circuits that have recognized that the term "controlled substance" includes substances regulated by state law, and hold that defendant's § 11378 convictions, which indisputably involve substances regulated by state law, qualify as controlled substance offenses.

# VI

## CONCLUSION

For the reasons set forth above, defendant's sentence should be affirmed.

DATED: November 20, 2023         Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section

*/s/ David R. Friedman*

DAVID R. FRIEDMAN
Assistant United States Attorney
Criminal Appeals Section

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is aware of two cases related to this appeal: *United States v. Cowan*, No. 23-50007, and *United States v. Maradiaga*, No. 23-3025. The defendants in both cases raised identical overbreadth claims in the district court.

# CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by
Ninth Circuit Rule 32-1 because the brief contains 9,445 words,
excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2.     This brief complies with the typeface requirements of Fed. R.
App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P.
32(a)(6) because it has been prepared in a proportionally spaced
typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: November 20, 2023          */s/ David R. Friedman*

DAVID R. FRIEDMAN
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA



**U.S. Department of Justice**

**United States Attorney
Central District of California**

*David R. Friedman*
*Assistant United States Attorney*
*Criminal Appeals Section*
*David.Friedman@usdoj.gov*

*1000 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*
*(213) 894-7418 (telephone)*

March 26, 2024

Molly Dwyer
Clerk of Court
U.S. Court of Appeals
(Via Ninth Circuit CM/ECF)

Re:    *United States v. Dylan MacGregor Cowan*, C.A. No. 23-50007
       *United States v. Samuel Martinez III*, C.A. No. 23-50011
       (Cal.—Friday, May 17, 2024—Pasadena)

Dear Ms. Dwyer:

The Government submits this letter pursuant to Federal Rule of Appellate Procedure 28(j).

In both of these appeals, defendants urge that the term "controlled substance" as used in U.S.S.G. § 4B1.2(b) reaches only drugs covered by the federal Controlled Substances Act. As the government argued in its answering briefs, that claim conflicts with the plain text of § 4B1.2(b) and the precedent of the Third, Fourth, Sixth, Seventh, Eighth, and Tenth Circuits. And while this Court previously embraced a narrower interpretation of § 4B1.2(b), that precedent is clearly irreconcilable with *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019).

The Eleventh Circuit has now "adopt[ed] the majority approach" that "[a] drug regulated by state law is a 'controlled substance' for state predicate offenses, even if federal law does not regulate that drug." *United States v. Dubois*, --- F.4th ----, 2024 WL 927030, at *8 (11th Cir. Mar. 5, 2024). In *Dubois*, the Eleventh Circuit concluded that "[t]he

text of the guidelines makes clear that a 'controlled substance' includes a substance that is regulated only by the law of the state of conviction." *Id.* Moreover, the fact that neighboring Guidelines, such as U.S.S.G. § 4B1.2(a), include cross-references to federal law confirms that the Sentencing Commission chose not to include such a cross-reference in § 4B1.2(b). *Id.*

The Eleventh Circuit also addressed this Court's precedent. *Id.* at *9. It was not "swayed by the reasoning of the Ninth Circuit that our approach undermines the guidelines' 'goal[ ]' of uniformity." *Id.* (alteration in original) (quoting *United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021)). "Although" the Eleventh Circuit has "cited the guidelines' goal of sentencing uniformity," it has "cautioned that this goal cannot alone justify a particular interpretation of a guideline and cannot be used to contradict the guideline's text." *Id.* (cleaned up). That is particularly true after *Kisor*.

Accordingly, the government reiterates that this Court should reexamine its precedent interpreting § 4B1.2(b) in light of *Kisor*. Seven Circuits have now held that the term "controlled substance" includes substances controlled by state law—and this Court should too.

Sincerely,

E. MARTIN ESTRADA
United States Attorney


 /s/ *David R. Friedman*

DAVID R. FRIEDMAN
Assistant United States Attorney
Criminal Appeals Section

Exhibit B

**FELONY ABSTRACT OF JUDGMENT - DETERMINATE**

CR-290

*(NOT VALID WITHOUT COMPLETED PAGE TWO OF CR-290 ATTACHED)*

TSE

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF:<br>Riverside | F I L E D<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF RIVERSIDE<br><br>JUL 0 9 2015<br><br>E Standifer<br><br>JUL 09 2015 |

PEOPLE OF THE STATE OF CALIFORNIA vs.     DOB: ▇▇▇▇

DEFENDANT: SERGIO GABRIEL MAYA

AKA: MAYA G SERGIO

CII NO: A26505508

BOOKING NO:                    ☐ NOT PRESENT

SWF1500198    -A

-B

-C

FELONY ABSTRACT OF JUDGMENT                ☐ AMENDED ABSTRACT    -D

☒ PRISON COMMITMENT    ☐ COUNTY JAIL COMMITMENT

| DATE OF HEARING<br>07/08/2015 | DEPT. NO.<br>S204 | JUDGE<br>Mark A. Mandio | |
|---|---|---|---|
| CLERK<br>L. Deloa | REPORTER<br>P. Carlucci | PROBATION NO. OR PROBATION OFFICER | ☒ IMMEDIATE SENTENCING |
| COUNSEL FOR PEOPLE<br>Paul Svitenko | | COUNSEL FOR DEFENDANT<br>DPD Michele Mathis | ☐ APPOINTED |

1. Defendant was convicted of the commission of the following felonies:

   ☐ Additional counts are listed on attachment _____ (number of pages attached)

| COUNT | CODE | SECTION NO. | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO/DATE/YR) | JURY | COURT | PLEA | TERM (L/M/U) | CONCURRENT | 1/3 CONSECUTIVE | CONSECUTIVE FULL TERM | INCOMPLETE SENTENCE (refer to item 5) | 654-STAY | SERIOUS FELONY | VIOLENT FELONY | YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | HS | 11378 | Possession for s | 15 | 07/08/15 | | | X | L | | | | | | | | 2 | 8 |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed, "S" for stayed, or "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| COUNT | ENHANCEMENT | TIME IMPOSED "S" or "PS" | ENHANCEMENT | TIME IMPOSED "S" or "PS" | ENHANCEMENT | TIME IMPOSED "S" or "PS" | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

3. ENHANCEMENTS charged and found to be true for PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed, "S" for stayed, "PS" for punishment struck. DO NOT LIST ENHANCEMENTS FULLY STRICKEN by the court.

| ENHANCEMENT | TIME IMPOSED "S" or "PS" | ENHANCEMENT | TIME IMPOSED "S" or "PS" | ENHANCEMENT | TIME IMPOSED "S" or "PS" | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

4. Defendant sentenced    ☐ to county jail per 1170(h)(1) or (2)

   ☒ to prison per 1170(a), 1170.1(a) or 1170(h)(3) due to ☐ current or prior serious or violent felony ☐ PC 290 or ☐ PC 186.11 enhancement

   ☒ per PC 667(b)-(i) or PC 1170.12 (strike prior)

   ☐ per PC 1170(a)(3). Preconfinement credits equal or exceed time imposed.    ☐ Defendant ordered to report to local parole or probation office.

5. INCOMPLETE SENTENCE(S) CONSECUTIVE

| COUNTY | CASE NUMBER |
|---|---|
| | |
| | |
| | |

6. TOTAL TIME ON ATTACHED PAGES: [    ]

7. ☐ Additional indeterminate term (see CR-292).

8. TOTAL TIME: | 2 | 8 |

Attachments may be used but must be referred to in this document.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CR-290 [Rev. July 1, 2012]

**FELONY ABSTRACT OF JUDGMENT - DETERMINATE**

Penal Code 1213, 1213.5

| PEOPLE OF THE STATE OF CALIFORNIA vs.<br>DEFENDANT: | SERGIO GABRIEL MAYA | | |
|---|---|---|---|
| SWF1500198 **-A** | **-B** | **-C** | **-D** |

## 9. FINANCIAL OBLIGATIONS (including any applicable penalty assessments):

### a. Restitution Fines:

Case A: $ __300.00__ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment)      $ __300.00__ per PC 1202.45 suspended unless parole is revoked
$ _____ per PC 1202.44 is now due, probation having been revoked.

Case B: $ _____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment)      $ _____ per PC 1202.45 suspended unless parole is revoked
$ _____ per PC 1202.44 is now due, probation having been revoked.

Case C: $ _____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment)      $ _____ per PC 1202.45 suspended unless parole is revoked
$ _____ per PC 1202.44 is now due, probation having been revoked.

Case D: $ _____ per PC 1202.4(b) (forthwith per PC 2085.5 if prison commitment)      $ _____ per PC 1202.45 suspended unless parole is revoked
$ _____ per PC 1202.44 is now due, probation having been revoked.

### b. Restitution per 1202.4(f):

Case A: $ _____  ☐ Amount to be determined   to   ☐ victim(s)*   ☐ Restitution Fund
Case B: $ _____  ☐ Amount to be determined   to   ☐ victim(s)*   ☐ Restitution Fund
Case C: $ _____  ☐ Amount to be determined   to   ☐ victim(s)*   ☐ Restitution Fund
Case D: $ _____  ☐ Amount to be determined   to   ☐ victim(s)*   ☐ Restitution Fund

☐ * Victim names(s), if known, and amount breakdown in item 11, below   ☐ * Victim names(s) in probation officer's report.

### c. Fine(s):

Case A: $ _____ per PC 1202.5.  $ _____ per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ concurrent  ☐ consecutive
☐ includes:  ☐ $ _____ Lab Fee per HS 11372.5(a)  ☐ $ _____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case B: $ _____ per PC 1202.5.  $ _____ per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ concurrent  ☐ consecutive
☐ includes:  ☐ $ _____ Lab Fee per HS 11372.5(a)  ☐ $ _____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case C: $ _____ per PC 1202.5.  $ _____ per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ concurrent  ☐ consecutive
☐ includes:  ☐ $ _____ Lab Fee per HS 11372.5(a)  ☐ $ _____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

Case D: $ _____ per PC 1202.5.  $ _____ per VC 23550 or _____ days  ☐ county jail  ☐ prison in lieu of fine  ☐ concurrent  ☐ consecutive
☐ includes:  ☐ $ _____ Lab Fee per HS 11372.5(a)  ☐ $ _____ Drug Program Fee per HS 11372.7(a) for each qualifying offense

d. Court operation assessment: $ _40.00_ per PC 1465.8   e. Conviction Assessment: $ _30.00_ per GC 70373   f. Other: $ _____ per (specify): _____

## 10. TESTING   ☐ Compliance with PC 296 verified   ☐ AIDS pursuant to PC 1202.1   ☐ other (specify):

## 11. REGISTRATION REQUIREMENTS: ☒ per (specify code section): __11590 HS__

## 12. ☐ MANDATORY SUPERVISION: Execution of a portion of the defendant's sentence is suspended and deemed a period of mandatory supervision
under Penal Code section 1170(h)(5)(B) as follows (specify total sentence, portion suspended, and amount to be served forthwith):

Total : [_____]   Suspended: [_____]   Served forthwith: [_____]

## 13. Other orders (specify):

## 14. IMMEDIATE SENTENCING:

☒ Probation to prepare and submit post-sentence report to
CDCR per PC 1203c.

Defendant's race/national origin: **Hispanic**

## 15. EXECUTION OF SENTENCING IMPOSED

a. ☒ at initial sentencing hearing
b. ☐ at resentencing per decision on appeal
c. ☐ after revocation of probation
d. ☐ at resentencing per recall of commitment (PC 1170(d).)
e. ☐ Other (specify):

## 16. CREDIT FOR TIME SERVED

| CASE | TOTAL CREDITS | ACTUAL | LOCAL CONDUCT | |
|---|---|---|---|---|
| A | 41 | 21 | 20 | [ ] 2933<br>[ ] 2933.1<br>[X] 4019 |
| B | | | | [ ] 2933<br>[ ] 2933.1<br>[ ] 4019 |
| C | | | | [ ] 2933<br>[ ] 2933.1<br>[ ] 4019 |
| D | | | | [ ] 2933<br>[ ] 2933.1<br>[ ] 4019 |

| Date Sentenced Pronounced:<br>07/08/15 | Time Served in State Institution:<br>[ ] DMH  [ ] CDC  [ ] CRC |
|---|---|

## 17. The defendant is remanded to the custody of the sheriff  ☒ forthwith  ☐ after 48 hours excluding Saturdays, Sundays, and holidays.

To be delivered to   ☒ the reception center selected by the director of the California Department of Corrections and Rehabilitation.

☐ county jail   ☐ other (specify):

CLERK OF THE COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE<br>07/09/2015 |
|---|---|

CR-290 (Rev. July 1, 2010)                **FELONY ABSTRACT OF JUDGMENT - DETERMINATE**                Page 2 of 2

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

Abstract of Judgment - Prison Commitment
Attachment Page - Further Orders

Case Number: SWF1500198
Defendant: SERGIO GABRIEL MAYA

## RESTITUTION ORDERS:

☐ Any disputes as to amount to be resolved in court hearing. Enhanced Collection Division to forward findings to Div. of Adult Institutions.    [TZC3A]

☐ Pay _____ restitution [victim] in amount determined by Probation, individual/collectively

(1202.4 (f) PC; Div Adult Inst to collect (2085.5 PC).    [TZC3]

☐ Victim Restitution to be paid to court as directed by Division of Adult Institutions.    [VRAP]

☐ Court reserves jurisdiction to set victim restitution.    [CRJVR]

☐ Defendant ordered to complete and return a Financial Disclosure form to the Court on or before _____
or within 5 days of release.    [TXT4]

☐ Stay of your obligation to pay probation revocation restitution fine of _____ is dissolved

(PC 12022.44). Payable through Division of Adult Institution    [TZF]

## CONCURRENT/CONSECUTIVE ORDERS:

☐ Case to run _____ with any _____
[CRCA]

☐ Count _____ to run concurrent to Case _____

from _____ County.    [CCCC]

☐ Count _____ to run consecutive to Case _____

from _____ County.    [CCSCC]

## OTHER ORDERS:

☐ Submit to HIV/AIDS testing by Division of Adult Institutions; Forward results to court for distribution (PC 1202.1/PC 1202(6).    [TZA2]

☐ Prior to Division of Adult Institution release, submit to HIV/AIDS testing by RSO medical staff, forward results to court for distribution. (PC 1202.1/PC 1202.6)    [TZA4 / TZA4A]

☐ Court recommends placement pursuant to the Pregnant and Parenting Womens's Alternative Sentencing Program Act. (PC 1174.4(d)).    [PPPWAS]

☐ Sheriff is directed to transport defendant to the Family Foundations Program in (SF - Santa Fe Springs, SD - San Diego, or F - Fresno).    [SDTFFP]

☐ CDCR to calculate both local conduct credits for time spent in local custody prior to transport to CDCR after

sentencing on _____ , and    [PRSCD]

☐ Credit for Time Served: From arrest date to original sentencing date _____ , _____

actual days plus _____ local conduct for a total of _____ days.    [PRSCTS]

☒ Submit necessary thumb and palm prints, blood and saliva specimens to Division of Adult Institutions  (PC 296(a)).
[TZA3]

CDOCA
RVSD 10/29/14

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

Abstract of Judgment - Prison Commitment
Attachment Page - Further Orders

Case Number:  SWF1500198
Defendant:  SERGIO GABRIEL MAYA

## OTHER ORDERS (CONTINUED):

☐ From original sentencing date to today's date _____, _____ actual days.
Total _____ actual days, plus _____ local conduct, equals _____
days credit.  [PRSPSC]

☐ Sheriff to Deliver Defendant to (DJJ) Division of Juvenile Justice upon receipt of acceptance notification.  [SDDD]

☐ Pay fine in the amount of _____ pursuant to Section 290.3 PC; payable to Division of Adult Institutions.  [TZB3]

☐ Pay fine of _____ ; Division of Adult Institutions to deposit in Clandestine Drug Lab cleanup account(H&S 11379.6(a)/H&S 11379.6(d)).  [TZB6]

☐ Pay fine in the amount of _____ pursuant to Section 264(b) PC; payable to the Division of Adult Institutions.  [TZB7]

☐ Pay fine of _____ ; Payable to Division of Adult Institutions (PC 288(e)).  [TZB8]

☐ Defendant prohibited from visitation with the child victim(s), DOB: _____ .  Division of Adult Institutions notified (PC 1202.05)  [TZM]

☐ Defendant to participate in a counseling or educational program having a substance abuse component through the Div of Adult Institutions (PC 1203.096)  [TZP]

☐ Pay booking fees of _____ ; Payable to Division of Adult Institutions (GC 29550)  [TZV1]

CDOCA
RVSD 10/29/14

CR-100

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE

STREET ADDRESS: Southwest Justice Center
MAILING ADDRESS: 30755-D Auld, Suite 1226
CITY AND ZIP CODE: Murrieta, CA 92563
BRANCH NAME:

PEOPLE OF THE STATE OF CALIFORNIA

vs.

DEFENDANT:

MAYA, SERGIO GABRIEL

**FINGERPRINT FORM**

FOR COURT USE ONLY

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 0 8 2015

CASE NUMBER:
SWF1500198

## INSTRUCTIONS

In any case in which the defendant is charged with a felony, the court must require the defendant to provide a right thumbprint on this form. Unless the court has obtained the thumbprint at an earlier proceeding, it must do so at the arraignment on the information or indictment, or upon entry of a guilty or no contest plea under Penal Code section 859a. In the event the defendant is convicted, this form is to be attached to the minute order reflecting the defendant's sentence and is permanently maintained in the court file. Please see Penal Code section 992 for further information, including what to do when the defendant is physically unable to give a right thumbprint.

For a proper imprint and durable record, this form should be printed on paper that meets California Department of Justice specifications: a 99–pound white tab card or 100–pound white tab stock 0.0070 inch thick (0.0066 through 0.0074 inch is acceptable). Paper smoothness should be 100–140 Sheffield units. The form should be printed with the grain left to right.

1. The box to the right contains the defendant's

   a. ☒ right thumbprint

   b. ☐ other print *(specify):*



2. The print was taken on *(date):*
   070815

3. The print was taken by

   a. Name: KUHN

   b. Position: DEPUTY SHERIFF

   c. Badge or serial number:
   2909

Form Adopted for Mandatory Use by the
Judicial Council of California CR-100
[Rev. January 24, 2012]

**FINGERPRINT FORM**

Penal Code, § 992

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUL 08 2015

L. De___

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
### FELONY PLEA FORM

People v. **SERGIO MAYA**          Case Number **SWF1500198**

JUL 10 2015

**A. ADVISEMENT OF RIGHTS:**

1. I have the right to a speedy and public trial by a judge or jury.
2. At my trial, I have the right to face and cross-examine any witnesses against me.
3. I have the right to ask the court to compel witnesses to attend my trial at no expense to me, and to present evidence in my defense.
4. I have the right against self-incrimination. I cannot be forced to testify against myself, but I also have the right to testify in my own defense if I choose to do so.
5. I have the right to be represented by a lawyer throughout my trial. If I cannot afford one, the court will appoint one to represent me at no cost to me.

**B. CONSEQUENCES OF PLEA (1 through 5 apply to everyone):**

1. As a convicted felon, I will not be able to own or possess any firearm. ~~I will be ordered to pay restitution to the victim(s) if the victim(s) suffered economic harm. I agree that the amount of victim restitution is _____~~. If the parties do not agree, the probation department will determine the amount. If I disagree with the amount, I must promptly request a hearing.
2. Charges and/or enhancements may have been dismissed as part of this negotiated disposition with the District Attorney's Office. I agree that I will be ordered to pay restitution to the victim(s) of the dismissed charges and/or enhancements if the victim(s) suffered economic harm.
3. I will be ordered to pay a restitution fine of at least $300 and not more than $10,000. There are several other fines and fees that will be imposed as a result of this guilty plea.
4. If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.
5. If I receive a state prison term, I will be placed on parole or local community supervision after completing the term. Parole or local community supervision will be for the term specified by law. Generally, parole is for up to five years and local community supervision is for up to three years. If my term of imprisonment is life, and I am ever granted parole, it may be for life. If I violate any of the terms of parole, I could be returned to state prison for up to one year per violation. If I violate any of the terms of local community supervision, I could be incarcerated in county jail for up to 180 days per violation.
6. If I am sentenced to county jail, a portion of my term may be suspended and, upon release from jail, I may be placed on mandatory supervision. If I violate any of the terms and conditions of my mandatory supervision, I could be returned to county jail for up to the remainder of my suspended jail term.
7. I will be required to give a DNA sample.
8. My driving privileges will be suspended or revoked by the Department of Motor Vehicles.
9. I understand that because I am pleading guilty to a qualifying offense, I will be ordered to register with law enforcement as a(n) _____ and that if I fail to register or to keep my registration current for any reason, new criminal charges may be filed against me. I understand that registration as a sex offender is a life long requirement.
10. I will be required to undergo AIDS testing.
11. Being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If I drive while under the influence of alcohol or drugs, or both, and as a result of that driving, someone is killed, I can be charged with murder.
12. Other _____

**C. DEFENDANT'S STATEMENT:**

1. All the promises made to me are written on this form, or stated in open court.
2. No one has made any threats to me or anyone close to me, or placed any pressure of any kind on me in order to make me plead guilty.

People v. _SERGIO  MAYA_                    Case Number _SWF1500198_

_Sm_ _____ 3. I understand that if I violate any of my probation terms, I could be sentenced to the maximum
custody term possible under these charges as set forth under "Plea Agreement", Item 2.

_Sm_ _____ 4. I have had adequate time to discuss with my attorney (1) my constitutional rights, (2) the
consequences of any guilty plea, and (3) any defenses I may have to the charges against me.

_Sm_ _____ 5. As part of this plea, I (circle one) (do) do not waive any right to appeal that I may have.

_Sm_ _____ 6. Factual Basis: I agree that I did the things that are stated in the charges that I am admitting.

**D. PLEA AGREEMENT:**

1.  I will enter a guilty plea to the following charges and enhancements:

    CT#2 HS 11378   ADMIT STRIKE PRIOR FOR PC 245(a)(1)/ PC 186.22(b)
    DISMISS REMAINING

    The Prosecutor will dismiss any charges and enhancements that I do not admit.

2.  The maximum possible custody commitment for the admitted charges and enhancements is:   6 YEARS

3.  My guilty pleas are conditional on receiving the following considerations as to sentence:

    a)  Formal probation will (circle one) be 1) denied; 2) granted; 3) decided by the court. If granted, the length of
    formal probation may be up to five years. If probation is granted, a suspended state prison sentence or
    felony county jail term (circle one) will/will not be imposed. A suspended felony county jail term may
    include a period of mandatory supervision for up to the remainder of the suspended jail term. The following
    legal restrictions apply to a decision to grant probation in this case:

    b)  The custody term will be  LT 16M X 2 = 32 MONTHS _____ (stip)

        The custody term shall not be **more** than _____ (top)

        The custody term shall not be **less** than _____ (floor)

    c)  ~~Fines:~~ SWM1406101 & LE3982 OSM - Dismissed.

    d)  ~~Fines:~~ Other: DA AGREES TO NOT FILE ON RSO # GPI51320002

    e)  Credit for time served will be  21  days actual;  20  days ☒ 4019  ☐ 2933;  41  total.  (DP)

**E. SIGNATURES**

**District Attorney:** The above is a correct statement of the Plea Agreement between defense and prosecution.

07/08/15     Julie Ann Baldwin                         Paul Svitenko
(DATE)       for Paul Svitenko                         (SIGNATURE)
             (PRINT NAME)

**Defendant:** I have read and understand this entire document. I waive and give up all of the rights that I have initialed. I
accept this Plea Agreement.

X 7-8-15     Sergio MAYA                               _____
(DATE)       (PRINT NAME)                              (SIGNATURE)

**Defense Attorney:** I am the attorney for the defendant. I am satisfied that (1) the defendant understands his/her
constitutional rights and understand that a guilty plea would be a waiver of these rights; (2) the defendant has had an
adequate opportunity to discuss his/her case with me, including any defenses he/she may have to the charges; and (3) the
defendant understands the consequences of his/her guilty plea. I join in the decision of the defendant to enter a guilty plea.

7/8/15       Michele Mathis                            _____
(DATE)       (PRINT NAME)                              (SIGNATURE)

**Interpreter:** Having been duly sworn, I have translated this form to the defendant in the _____ language.
The defendant has stated that he/she fully understood the contents of the form prior to signing.

_____     _____               _____
(DATE)              (PRINT NAME)                   (SIGNATURE)

Approved for Optional Use                                              **Page 2 of 2**
Riverside Superior Court
CR004 (Rev. 12/11/14)

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 08 2015

CM S

MAY 1 3 2015

## SUPERIOR COURT, STATE OF CALIFORNIA
### COUNTY OF RIVERSIDE

|  |  |
|---|---|
| People of the State of Calif | ) Case # : SWF1500198 |
| v. | ) Declaration in Support of Arrest Warran |
| Bedolla, Sergio    D.O.B. ▇ | ) |

The undersigned, Deputy Gore, declares that he is a Deputy Sheriff with the Riverside County Sheriff's Department.

On Friday, March 13, 2015, about 1641 hours, Deputy Acosta #4404 and I were traveling southbound on Casino Drive in the city of Lake Elsinore when we noticed documented Elsinore Vatos Locos (EVL) criminal street gang member Sergio CORRUPT Bedolla ▇ walking southbound with an unknown male. It must be noted that Bedolla also goes by the name Sergio Maya. As Deputy Acosta and I pulled into the parking lot of the Quality Inn, Bedolla and the unknown male subject stopped and agreed to speak with us. While Deputy Acosta was parking our patrol car, we parked on the western portion of the driveway not obstructing Bedolla or the unknown male's path.

As I was speaking with Bedolla, Deputy Acosta was speaking with the second male who was identified as Brian Hattamer ▇ I asked Bedolla if he had anything illegal on his person at which point he stated he had some "dope" and motioned to this front pants pocket and placed his green backpack on the ground at his feet.

I asked Bedolla if I could search him and he said, "yes." I located a hypodermic needle filled with a dark brown liquid in Bedolla's front pants pocket where he motioned. In addition, I located a clear glass smoking pipe which, due to my training and experience, I recognized as an instrument commonly used to smoke methamphetamine in Bedolla's rear pants pocket.

I removed both items and placed them on the ground next to Bedolla's green backpack.

While I continued to speak with Bedolla who was standing next to my patrol car and Deputy Acosta, I asked him if I could search the backpack he placed on the ground earlier in the contact. Bedolla consented.

As I continued my search into Bedolla's backpack pursuant to Bedolla's consent, I located a clear plastic shopping bag containing a smaller clear plastic baggie containing a large "shard" of suspected methamphetamine as well as a clear / purple plastic container containing marijuana. Furthermore, I located a white rubber / plastic circular container containing suspected heroin and a black digital scale with a brown tarlike substance adhered to the top "weigh" portion.

Bedolla was released at the scene pending further investigation.

While at the Perris Police Station, Deputy Acosta tested the brown tar like substance (#1753012) using a NIK test kit confirming it as heroin and the white crystalline substance (#1753104) using a NIK test kit confirming it as methamphetamine. He weighed each item individually using a digital scale resulting in their approximate weights.

After obtaining a search warrant for Bedolla's cellphone, I noticed multiple conversations where individuals text Bedolla asking to buy narcotics.  Such conversations include purchasing "fire" which is a street term for good quality methamphetamine, a 6-pack which is a street term for 6 grams of heroin, and a 3-pack which is a street term for 3 grams of heroin.

Wherefore, declarant prays that an Arrest Warrant issue for the arrest, day or night Sergio Gabriel Bedolla (Sergio Maya). Description of Sergio Bedolla: 5'06" tall, weight 150 lbs., Hispanic male, brown hair, brown eyes; DOB: ███████ Address: Transient in the city of Lake Elsinore in the state of California.

LAW ENFORCEMENT:

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3-25-2015

_____
Signature

JASON GORE
_____
Print Name

JUDICIAL OFFICER:

_____ Approved     _____ Disapproved

Bail: _____   Date: _____

_____
Signature

_____
Print Name

DDA R Switalski

EXTRADITION
APPROVED/DISAPPROVED

CASH BOND
$100,000.00
RECOMMEND:05-08-15

MICHAEL A. HESTRIN
DISTRICT ATTORNEY

DDA:_____
AGENCY#:  GP150720001/RSDF

MAY - 7 2015

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 08 2015

N. Byrum

SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE
(Southwest)

EDD

MAY 1 2 2015

S

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

SERGIO GABRIEL MAYA
3611 Wilson St
Lake Elsinore, CA 92530

AKA:MAYA G SERGIO
AKA:SERGIO GABRIEL BEDOLLA
DOB:

Defendant.

D.A.# 336586

CASE NO. SWF1500198
FELONY COMPLAINT

& NOTICE TO APPEAR

PC 1000 DIVERSION        PC 1210.1 REFERRED
Eligible _____           YES _____
Not Eligible __X__       NO __X__
Unknown if Eligible _____

### APPEARANCE NOTICE

Criminal charges have been filed against you. **You are required to appear** for arraignment at 7:30 A.M. on June 08, 2015 at:

> SOUTHWEST
> 30755 AULD ROAD
> MURRIETA, CALIFORNIA  92563

The court calendar will list your name and the courtroom to which your case is assigned. Go there, check in, and wait to be arraigned.
IF YOU FAIL TO APPEAR ON THIS DATE, A WARRANT WILL BE SOUGHT FOR YOUR ARREST. **BRING THIS NOTICE WITH YOU**.

### COUNT 1

The undersigned, under penalty of perjury upon information and belief, declares: That the above named defendant committed a violation of Health and Safety Code section 11351, a felony, in that on or about March 13, 2015, in the County of Riverside, State of California, he did wilfully and unlawfully possess for sale and purchase for purpose of sale a controlled substance, to wit, HEROIN.

### COUNT 2

That the above named defendant committed a violation of Health and Safety Code section 11378, a felony, in that on or about March 13, 2015, in the County of Riverside, State of California, he did wilfully and unlawfully possess for sale a controlled substance, to wit, METHAMPHETAMINE.

**CASH BOND**

RECOMMENDED $ _____

MICHAEL A. HESTRIN
DISTRICT ATTORNEY

**SPECIAL ALLEGATION – 667(c) & (e)(1) and 1170.12(c)(1)**
It is further alleged that the defendant, was on or about October 13, 2009 in the Superior Court of the State of California, for the County of Riverside, convicted of the crime of, ASSAULT WITH A DEADLY WEAPON WITH 186.22, subdivision (b), a serious and violent felony, in violation of section 245, subdivision (a), subsection (1) of the Penal Code, within the meaning of Penal Code sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1).

## MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2a(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else. Note exceptions in California Penal Code § 1054.2a(a) and (2).

I declare under penalty of perjury upon information and belief under the laws of the State of California that the foregoing is true and correct.

Dated: April 30, 2015

PAS: amp

_____
Complainant

COURT ORIGINAL